Cite as 2024 Ark. App. 297

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-23-200

| | |
|---|---|
| JOY WADLEY, ADMINISTRATRIX OF THE ESTATE OF FARRIS EUGENE PARLIMENT, DECEASED<br><br>APPELLANT | Opinion Delivered May 8, 2024<br><br>APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT<br>[NO. 49CV-09-73] |
| V.<br><br>BOBBY HATTON AND WANDA HATTON<br><br>APPELLEES | HONORABLE ANDY RINER, JUDGE<br><br>REVERSED AND REMANDED |

**BART F. VIRDEN, Judge**

Appellant Joy Wadley, administratrix of the estate of Farris Eugene Parliment, deceased, appeals from the Montgomery County Circuit Court's order denying the estate's petition for writ of scire facias to revive a deficiency judgment obtained during foreclosure proceedings against appellees Bobby and Wanda Hatton. Wadley argues that the trial court erred in determining that the ten-year period for revival, or renewal, of a judgment via writ of scire facias began to run from the date of the initial foreclosure decree—not the deficiency judgment—because the initial foreclosure decree did not dismiss the parties from the case or put the final judgment as between these parties into execution. Because we conclude that the deficiency judgment may be revived pursuant to Ark. Code Ann. § 16-65-501 (Supp. 2021), we reverse and remand.

## I. *Background*

On October 9, 2009, Eugene Parliment filed a complaint in foreclosure against the Hattons, Diamond Bank, and the United States of America, Department of the Treasury—Internal Revenue Service (IRS). In his complaint, Parliment alleged that the Hattons had executed a promissory note to him on November 12, 1996, for $186,657.46 and that on January 29, 2004, they executed an addendum to the promissory note for $252,454.01 and a mortgage on real property situated in Montgomery County. Parliment alleged that, as of July 30, 2009, the Hattons were indebted to him in the amount of $316,591.13 in principal and interest. Parliment acknowledged in his complaint that Diamond Bank held a first lien on the Hattons' property and asserted that the IRS held an inferior judgment or lien.

The defendants filed answers; Diamond Bank filed a countercomplaint and a cross-complaint; the parties then filed answers to those complaints and all of the amended complaints. These filings culminated in a hearing on December 10, 2010, and a judgment was entered on March 2, 2011. The trial court determined that the Hattons, who had admitted the validity of the liens and offered no defense, were in default. The trial court also established the priority of the liens. As to Parliment, the trial court found that he held a second lien and was entitled to $316,591.13; that Parliment's right to foreclosure had become absolute; and that Parliment was entitled to interest, an attorney's fee, court costs, and other necessary expenses incurred in connection with the collection of the indebtedness. The trial court also appointed a commissioner to sell the Hattons' real and personal property to satisfy all of the liens. The trial court noted that, if a surplus remained after complete

2

payment to Diamond Bank, the commissioner was to distribute that surplus to Parliment and then to the IRS.

On September 7, 2011, the trial court entered a deficiency judgment.[1] The deficiency judgment referenced the March 2 foreclosure judgment and noted that Diamond Bank's lien had been satisfied in full; that a surplus of $141,892.32 had been realized from the sale of the Hattons' property and had been paid to Parliment; and that the Hattons owed Parliament a balance of $220,623.92. The trial court then "ordered, adjudged and decreed" that the deficiency judgment in the amount of $220,623.92 was one "for which execution may issue." On December 6, 2011, Parliment caused a writ of execution to be issued; however, the writ was returned by the sheriff's office unsatisfied because the sheriff's office was notified by counsel for the Hattons that they had filed for bankruptcy on January 10, 2012. Parliment subsequently died.

On March 19, 2021, Charles Parliment, then personal representative of Parliment's estate, filed a petition for writ of scire facias seeking to revive the deficiency judgment entered September 7, 2011. The estate alleged that the current balance, considering all credits and accrued interest, was $383,921.66. The estate filed its notice of the writ of scire facias seeking to revive the deficiency judgment, and the Hattons were served with summonses and a copy of the writ. On June 17, 2021, the Hattons objected to the writ on the basis that the trial

---

[1]Arkansas Code Annotated section 18-49-105 (Repl. 2012) is titled "deficiency judgments." If the whole of mortgaged property does not sell for a sum sufficient to satisfy the amount due, an execution may be issued against the defendant as on ordinary judgments. Ark. Code Ann. § 18-49-105.

3

court lacked jurisdiction to grant it because more than ten years had elapsed since the original foreclosure judgment was entered on March 2, 2011.

The trial court issued an opinion finding that "the judgment of December 10, 2010 was the operative final judgment in this case" and that Parliment had ten years from December 10, 2010, to revive the judgment, which had been placed into execution.[2] The trial court later entered an order denying the estate's petition for writ of scire facias, finding that the judgment lien had expired and could not be renewed or revived. Administratrix Wadley appeals from both the opinion and the order.

## II. *Standard of Review*

When the issue is one of law, our review is de novo; however, we will not reverse a trial court's factual findings unless they are clearly erroneous. *Middleton*, *supra.* A finding of fact made by a trial court sitting in equity is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all of the evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

---

[2]The ten-year period for filing a petition for writ of scire facias to revive a judgment runs from the date the judgment was entered on the record by the clerk of the court and not when the trial court pronounces its decision from the bench. *Middleton v. Lockhart*, 2012 Ark. 131, 388 S.W.3d 451. Here, the foreclosure hearing was held on December 10, 2010, and the trial court pronounced its decision from the bench, but the judgment was not entered until March 2, 2011. The trial court's repeated references to the date of December 10, 2010, are inaccurate, but the trial court's reasoning about expiration of the lien would be the same. In other words, the estate's filing for a petition to revive the judgment on March 19, 2021, is more than ten years from both December 10, 2010, and March 2, 2011.

III. *Discussion*

A writ of scire facias is a writ issued requiring a person against whom it is brought to show cause why a judgment should not be revived. *Horne v. Cuthbert*, 2015 Ark. App. 592, 473 S.W.3d 559. Scire facias is not the commencement of a new suit but is a continuation of the old one, and its object is not to procure a new judgment for the debt but to execute the judgment that has already been obtained. *Id.* Arkansas Code Annotated section 16-65-501 governs the issuance of a writ of scire facias and provides, in pertinent part, that the plaintiff or his or her legal representatives at any time before the expiration of the lien of a judgment may sue out a scire facias to revive the judgment. Ark. Code Ann. § 16-65-501(a). No scire facias to revive a judgment shall be issued except within ten years from the date of the rendition of the judgment, or if the judgment shall have been previously revived, then within ten years from the order of revivor. Ark. Code Ann. § 16-65-501(f).

Wadley argues that, when the trial court entered the March 2 foreclosure judgment, Parliment did not know how much his judgment against the Hattons would be after any credits following the sale of their property and that it was not until the trial court entered the deficiency judgment on September 7 that he knew the amount for which execution could issue. Wadley further argues that the estate did not seek to revive the judgment ordering foreclosure and the sale of the Hattons' property; rather, it sought to revive the judgment that finally dismissed the parties and concluded their rights to the subject matter in controversy. She points out that the scire facias statute refers to "judgment" without any additional description of that term.

The Hattons attempt to characterize the deficiency judgment as a mere accounting and an acknowledgement of the debt referenced in the initial foreclosure judgment. They cite *Malone v. Malone*, 338 Ark. 20, 991 S.W.2d 546 (1999), in which the supreme court rejected the proposition that section 16-65-501 and the case law interpreting that statute would allow for revival of a judgment through a subsequent acknowledgment of the debt.[3] The Hattons argue that the deficiency judgment was an order establishing only the amount owed under the initial foreclosure judgment and that it did not restart the revivor period. They insist that an action for revivor had to have been instituted within ten years from the date of the *original* foreclosure judgment.

The deficiency judgment here was more than an acknowledgment of the debt found by the original foreclosure judgment. A judgment must be tested by substance and not form. *Lawrence v. Ford Motor Credit Co.*, 247 Ark. 1125, 449 S.W.2d 695 (1970). A judgment for money must be a final determination of the rights of the parties in an action, must specify the amount the defendant is required to pay, and must be capable of enforcement by execution or other appropriate means. *Daniel v. Ark. Dep't of Human Servs.*, 2017 Ark. 206,

---

[3]The supreme court in *Malone* also discussed the general statute of limitations on judgments under Ark. Code Ann. § 16-56-114 (Repl. 2005) and tolling pursuant to Ark. Code Ann. § 16-65-117(d)(1)(B). The estate did not pursue the remedy of a civil action on a judgment under section 16-56-114 and made no argument below, or on appeal, with respect to tolling of the limitations period. In *Agribank, FCB v. Holland*, we said that "[r]evivor proceedings and actions on judgments are distinct and cumulative remedies." 71 Ark. App. 159, 161, 27 S.W.3d 462, 464 (2000) (citing 46 Am. Jur. 2d *Judgments* § 441 at 728 (1994) (holding that a deficiency judgment could be revived by bringing an ordinary civil action).

520 S.W.3d 258. The September 7 deficiency judgment qualifies as a judgment. It is a final judgment discontinuing the action; it specifies the parties and the exact amount that the Hattons are required to pay Parliment or his estate; and it specifically states that it is a judgment "for which execution may issue." It is important to note that the Hattons are not challenging the validity of the September 7 deficiency judgment. They did not appeal from that judgment entered in 2011 and do not assert that the trial court lacked jurisdiction to have entered it.

Although the March 2 foreclosure judgment was also capable of being revived within ten years, there is nothing in section 16-65-501 that would prevent the September 7 deficiency judgment from being revived independently of the foreclosure judgment. *See Middleton, supra.* We therefore hold that the trial court erred as a matter of law in finding that Wadley could not revive the deficiency judgment. We reverse the trial court's decision to the contrary and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

KLAPPENBACH and WOOD, JJ., agree.

*Ogles Law Firm, P.A.*, by: *John Ogles*, for appellant.

*Honey Law Firm, P.A.*, by: *Alexandra Honey*, for appellees.